**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| JOHN DOE, | ) |
|         Plaintiff, | ) |
| v. | ) Docket No. 2:19-00341-NT |
| REGIONAL SCHOOL UNIT NO. 21, JILL LAMONTAGNE, JASON SULLIVAN, BRUCE LEWIA, | ) |
|         Defendants. | ) |

**ORDER ON PLAINTIFF'S MOTION TO PROCEED UNDER ALIAS**

Plaintiff John Doe claims that he was sexually abused by Defendant Jill Lamontagne, a teacher at Kennebunk High School, in 2017. In his Amended Complaint, Doe alleges five counts against Lamontagne and two counts against Regional School Unit No. 21 (the "**District**"), Assistant Principal Jason Sullivan ("**Sullivan**"), and Assistant Principal Bruce Lewia ("**Lewia**"). Am. Compl. (ECF No. 27) ¶¶ 34–75. Before me is the Plaintiff's motion to proceed under an alias ("**Pl.'s Mot.**") (ECF No. 3). For the following reasons, the Plaintiff's motion is **GRANTED**.

**BACKGROUND**

At this stage of the proceedings, I rely on the allegations set forth in the Amended Complaint. Plaintiff John Doe was a 17-year-old senior at Kennebunk High School in 2017. Am. Compl. ¶¶ 6–7. Defendant Jill Lamontagne was a health teacher at the school. Am. Compl. ¶ 9. During Doe's senior year, Lamontagne began to oversee and assist Doe with his studies. Am. Compl. ¶ 10. She also began to have

inappropriate conversations with Doe and interact with him on social media. Am. Compl. ¶¶ 10–12. In early 2017, Lamontagne allegedly began to sexually abuse Doe in her classroom closet, in her car, and at her home. Am. Compl. ¶¶ 13–14.

In March of 2017, Assistant Principal Jason Sullivan and Assistant Principal Bruce Lewia began to investigate whether Lamontagne was sexually abusing Doe. Am. Compl. ¶ 19. Doe denied that any sexual misconduct had taken place because he was concerned about potential criminal and employment repercussions for Lamontagne. Am. Compl. ¶ 21. Although Doe was a minor, Sullivan and Lewia did not include Doe's parents in the interview. Am. ¶ 20. The March 2017 investigation did not result in any measures to protect Doe, and Doe continued to attend study hall in Lamontagne's classroom. Am. Compl. ¶¶ 22, 24. Lamontagne allegedly continued to sexually abuse Doe through June of 2017. Am. Compl. ¶¶ 24, 26. After Doe attempted suicide that month, his parents contacted the Kennebunk Police Department, Child Protective Services, and the District School Board. Am. Compl. ¶¶ 27–28, 32. The School Board reopened the investigation into Lamontagne, who resigned from the District in September of 2017 and was later criminally charged. Am. Compl. ¶¶ 32–33; Pl.'s Mot. 3.

## DISCUSSION

The Plaintiff moves to proceed under alias because he is a survivor of sexual assault and because he suffered severe mental and emotional distress. Pl.'s Mot. 3–4. Both Defendant Lamontagne and the School Defendants oppose the motion. (ECF Nos. 14, 19).

### A.   Standard of Review

" 'There is a strong common law presumption favoring public access to judicial proceedings and records.' " *Flanders v. Maine*, No. 2:12-cv-00277-JAW, 2019 WL 2929500, at *2 (D. Me. July 8, 2019) (slip copy) (quoting *In re Salem Suede, Inc.*, 268 F.3d 42, 45 (1st Cir. 2001)). In a civil case, "the plaintiff instigates the action, and, except in the most exceptional cases, must be prepared to proceed on the public record." *Id.* (internal quotations omitted). In accordance with this practice, the Federal Rules of Civil Procedure direct that a case proceed in the real names of the parties. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."); Fed. R. Civ. P. 17(a)(1) (absent specified exceptions, "[a]n action must be prosecuted in the name of the real party in interest"). The Rules themselves do not provide a means for a party to proceed anonymously.

However, federal courts have permitted parties to proceed under pseudonym in certain cases. *See Doe v. Trustees of Dartmouth College*, No. 18-cv-040-LM, 2018 WL 2048385, at *7 (D. Mass. May 2, 2018). Neither the U.S. Supreme Court nor the First Circuit has "definitively articulated" when a plaintiff may proceed under a pseudonym. *See id.* at *2. In the related context of a request to seal judicial records, the First Circuit has stated that the "starting point must always be the common-law presumption in favor of public access." *Nat'l Org. For Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011). The First Circuit has emphasized that there must be a compelling countervailing interest to justify limiting that access, though it has indicated that "privacy rights of participants and third parties [ ] are among those interests which, in appropriate cases, can limit the presumptive right of access to

judicial records." *McKee*, 649 F.3d at 72 (internal quotations omitted); *Dartmouth*, 2018 WL 2048385, at *3–4.

Other federal courts of appeals have developed balancing tests specifically for assessing whether the use of a pseudonym should be permitted. These courts seem to agree that " 'district courts should balance a plaintiff's interest and fear against the public's strong interest in an open litigation process.' " *Dartmouth*, 2018 WL 2048385, at *4 (quoting *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011)). However, they have developed tests with slightly different factors.[1] Because the parties in this case have applied the test adopted by the Third Circuit[2] and because other courts in this Circuit have used the same test, I will apply the Third Circuit's multifactor test. *See Dartmouth*, 2018 WL 2048385, at *4–5 (noting that the "Third Circuit's test is consistent with the overall aim of the First Circuit's framework for sealing judicial records"); *Doe v. Standard Insur. Co.*, No. 1:15-cv-00105-GZS, 2015 WL 5778566, at *2–3 (D. Me. Oct. 2, 2015) (applying the Third Circuit test).

Under the Third Circuit test, a court should consider:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in

---

[1] The Second, Third, Fourth, and D.C. Circuits have adopted tests for this determination. *See Doe v. Trustees of Dartmouth College*, No. 1:18-cv-690-JD, 2018 WL 5801532, at *1–2 (D.N.H. Nov. 2, 2018).

[2] The Plaintiff and Lamontagne use the Third Circuit factors to analyze the issue. Pl.'s Mot. 2; Lamontagne Opp'n 2–3. The primary case cited by the School Defendants in their brief opposition also referenced the Third Circuit factors. Sch. Defs.' Opp'n 2 (citing *Doe v. Standard Ins. Co.*, No. 1:15-CV-00105-GZS, 2015 WL 5778566 (D. Me. Oct. 2, 2015)).

4

> knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; . . . (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives . . . . [(7)] the universal level of public interest in access to the identities of litigants; [(8)] whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and [(9)] whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Megless*, 654 F.3d at 409. The core issue in the Third Circuit's test is "whether a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation." *Id.* Mere embarrassment or economic harm is generally insufficient. *Id.* at 408; *see also Dartmouth,* 2018 WL 2048385, at *4; *Siedle v. Putnam Investments, Inc.,* 147 F.3d 7, 10 (1st Cir. 1998) ("The mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access.").

### B.   Analysis

The first factor considers the extent to which the litigant's identity has been kept confidential. The School Defendants assert, without providing evidence, that "they are [ ] aware that Plaintiff's identity is widely known as a result of Lamontagne's criminal trial." Sch. Defs.' Opp'n 2. Though the criminal proceedings against Lamontagne were covered by the local media, news reports appear to have not named the Plaintiff because he had been sexually assaulted. *See* Journal Tribune article (ECF No. 22-1). Lamontagne notes that the Plaintiff testified in the criminal trial under his own name. Lamontagne Opp'n 3. But, the question is not whether anyone knows the Plaintiff's identity, but rather whether his identity is widely known

5

beyond his social circle or among the general public. *See Dartmouth*, 2018 WL 2048385, at *5 n.2. Because the news reports of the trial did not name the Plaintiff and the record does not contain other evidence to suggest that his identity is widely known, I find that this factor weighs against disclosure. *But cf. Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 507 (M.D. Pa. 2007) (suggesting that "testify[ing] live at trial" may be a factor that supports loss of anonymity).[3]

The second factor addresses the basis upon which disclosure is feared and the substantiality of that basis. The Plaintiff represents that if his identity is disclosed, he will be revictimized. Pl.'s Mot. 4. The Plaintiff's mental health distress resulting from Lamontagne's alleged abuse, which culminated in multiple suicide attempts, heightens this concern. Courts have recognized that anonymity can be important to safeguard recovery from trauma. *See Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011). "[C]ourts now place more weight on the psychological trauma faced by victims of sexual assault" especially in light of "the easy public access of court records online." *Doe v. Haynes*, No. 4:18CV1930 HEA, 2019 WL 2450813, at *3 (E.D. Mo. June 12, 2019) (allowing plaintiff to proceed under alias because her privacy interest outweighed public interest in learning her identity). In light of the Plaintiff's trauma and mental health distress, *see* Am. Compl. ¶¶ 27–31, I find that the second factor favors the Plaintiff.

---

[3] The Third Circuit affirmed the district court's determination on anonymity. *See Lozano v. City of Hazleton*, 620 F.3d 170, 194–95 (3d Cir.2010), *cert. granted, judgment vacated on other grounds sub nom. City of Hazleton, Pa. v. Lozano,* 563 U.S. 1030 (2011).

The third factor considers whether there is a public interest in maintaining the Plaintiff's anonymity. The underlying concern is that, if the plaintiff's identity is exposed, other similarly situated litigants might be deterred from litigating claims that that the public wants to see litigated. *See Megless*, 654 F.3d at 410. The Plaintiff argues that requiring him to disclose his identity could have a chilling effect on other survivors of sexual violence. I agree that "[t]here is a strong public interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Doe v. Cabrera*, 307 F.R.D. 1, 6 (D.D.C. 2014) (quotation marks and alteration omitted). I find that this strong public interest, as well as an interest in minor students reporting inappropriate behavior by teachers, weighs in favor of the Plaintiff.

The fourth factor is whether there is an atypically weak public interest in knowing the litigant's identity due to the purely legal nature of the dispute. Because the dispute here is not purely legal, this factor weighs against granting the motion.

The fifth factor asks if the litigant will choose to sacrifice a claim to preserve his anonymity. The Plaintiff has not stated that he intends to withdraw the lawsuit if he is not permitted to proceed under an alias. Thus, this factor weighs against granting the Plaintiff's motion.

The sixth factor considers whether the litigant is seeking a pseudonym for any nefarious reason. The Plaintiff represents that his only motive in seeking to remain anonymous is to prevent emotional distress. Pl.'s Mot. 5. Because the Defendants do

not assert that the Plaintiff has a nefarious motive, and there is nothing in the record to suggest that there is one, this factor weighs in favor of the Plaintiff's motion.

The seventh, eighth, and ninth factors disfavor anonymity. The seventh simply acknowledges that there is a "universal interest in favor of open judicial proceedings."[4] *Megless*, 654 F.3d at 411. I consider this as a factor supporting disclosure. The eighth factor weighs the public's interest in knowing the litigant's identity. In assessing this interest, I consider the "subject matter of the litigation, the status of the litigant as a public figure, or any other reason." *Dartmouth*, 2018 WL 2048385, at *7. Here, unlike in *Dartmouth*, the Defendants include a public school district and public employees, and the allegations concern investigations into student safety and staff misconduct by a public school. These facts suggest that the public's interest in the litigation might be greater than in *Dartmouth*. However, the Plaintiff himself is not a public figure, and the public's interest in the subject matter "will not be impeded merely because plaintiff's identity is kept private." *See id.* I consider this factor neutral. Finally, the ninth factor asks whether the opposition to the use of a pseudonym is illegitimately motivated. Neither party has given any indication that this is the case. I consider this factor neutral too.

Based on these factors, I conclude that the Plaintiff can proceed under the alias "John Doe." Though some factors weigh against anonymity, I am persuaded that the Plaintiff has established good cause to proceed anonymously. The Plaintiff has

---

[4] I do not agree with Lamontagne's assertion, unsupported by relevant authority, that the Plaintiff should be required to publicly accuse her in this action because she publicly faced, and was acquitted of, criminal charges related to the same claims.

represented that there is a real danger of harm if he cannot proceed under alias because of the trauma and mental health distress associated with Lamontagne's alleged sexual abuse. *See Megless*, 654 F.3d at 409; *Standard Insur. Co.*, 2015 WL 5778566, at *1 (The "most compelling situations involve matters which are highly sensitive, such as social stigmatization [and] real danger of physical harm."). Moreover, the Defendants know the Plaintiff's identity and his use of a pseudonym will not "impair[]" the Defendants in "conducting discovery or impeaching Plaintiff's credibility."[5] *Haynes*, 2019 WL 2450813, at *4.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Plaintiff's motion to proceed under alias (ECF No. 3).

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 29th day of May, 2020.

---

[5] The Defendants assert that their ability to defend themselves is impaired, but provide no explanation of how their ability to defend themselves will be harmed.