# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| JOHN DOE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>REGIONAL SCHOOL UNIT NO. 21, )<br>JILL LAMONTAGNE, JASON )<br>SULLIVAN, BRUCE LEWIA, )<br>)<br>Defendants. ) | Docket No. 2:19-00341-NT |

## ORDER ON THE DEFENDANTS' MOTION TO DISMISS COUNT VI

Plaintiff John Doe claims that he was sexually abused by Defendant Jill Lamontagne, a teacher at Kennebunk High School, in 2017. In his Amended Complaint, Doe alleges five counts against Lamontagne and two counts against Regional School Unit No. 21 (the "**District**"), Assistant Principal Jason Sullivan ("**Sullivan**"), and Assistant Principal Bruce Lewia ("**Lewia**"). Am. Compl. (ECF No. 27) ¶¶ 34–75. The District, Sullivan, and Lewia move to dismiss for failure to state a claim in Count VI, which alleges that they violated Doe's "substantive due process" rights, including his "right to bodily integrity, personal privacy, and bodily security." Am Compl. ¶ 70; Motion to Dismiss Count VI of Plaintiff's Complaint ("**Defs.' Mot.**") (ECF No. 15).[1] For the following reasons, the Defendants' motion to dismiss Count VI is **DENIED**.

---

[1] Doe amended his Complaint after the Defendants filed their motion to dismiss. (ECF Nos. 24, 26, 27.) The Defendants then filed a renewed motion to dismiss and adopted their previous briefing in support of the motion. (ECF No. 28.) Doe opposed the motion and incorporated his opposition to the original motion. (ECF No. 30.)

## BACKGROUND

I treat the following allegations of the Amended Complaint as true for the purposes of assessing the Defendants' motion to dismiss.

In 2017, Plaintiff John Doe ("**Doe**") was a 17-year-old senior at Kennebunk High School ("**KHS**"). Am. Compl. ¶¶ 6–7. Defendant Jill Lamontagne was a health teacher at KHS. Am. Compl. ¶ 9. During Doe's senior year, Lamontagne began to oversee and assist Doe with his studies. Am. Compl. ¶ 10. She also began to have inappropriate conversations with Doe and interact with him on social media. Am. Compl. ¶¶ 10–12. In early 2017, Lamontagne allegedly began to sexually abuse Doe in her classroom closet, in her car, and at her home. Am. Compl. ¶¶ 13–14.

In March of 2017, rumors of Lamontagne's sexual misconduct began circulating at KHS, prompting Assistant Principal Jason Sullivan and Assistant Principal Bruce Lewia to investigate Lamontagne's conduct. Am. Compl. ¶ 19. As part of the investigation, Sullivan and Lewia interviewed Doe. Am. Compl. ¶¶ 20–21. Doe denied that any sexual misconduct had taken place because he was concerned about potential criminal and employment repercussions for Lamontagne. Am. Compl. ¶ 21. Although Doe was a minor, Sullivan and Lewia did not include Doe's parents in the interview. Am. Compl. ¶ 20. The March 2017 investigation did not result in any measures to protect Doe, and Doe continued to attend study hall in Lamontagne's classroom. Am. Compl. ¶¶ 22, 25.

It is alleged that Lamontagne continued to sexually abuse Doe through June of 2017. Am. Compl. ¶¶ 24, 26. After Doe attempted suicide that month, his parents contacted the Kennebunk Police Department, Child Protective Services, and the

District School Board. Am. Compl. ¶¶ 27–29, 32. The School Board reopened the investigation into Lamontagne and placed Lamontagne on paid administrative leave. Am. Compl. ¶ 32. On September 1, 2017, Lamontagne sent a letter of resignation, and the District accepted her resignation the same day. Am. Compl. ¶ 33.

## DISCUSSION

### I. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the "legal sufficiency" of a complaint. *Me. Educ. Ass'n Benefits Trust v. Cioppa*, 842 F. Supp. 2d 373, 376 (D. Me. 2012). The general rules of pleading require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That "short and plain statement" need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and alterations omitted); *see Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (complaint need not contain "an exposition of [plaintiff's] legal argument," nor must it "pin plaintiff's claim for relief to a precise legal theory").

To determine whether a complaint states a claim, courts in the First Circuit follow a two-step analysis. First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717 (1st Cir. 2014). Then, taking all well-pleaded facts as true and "drawing all reasonable inferences in [the plaintiffs'] favor," the court must determine whether the complaint "plausibly narrate[s] a claim for relief." *Id.* (internal quotations omitted).

3

"Plausible" means "more than merely possible" but does not require all facts necessary to establish a prima facie case. *Id.* (internal quotations omitted). Although a plaintiff need not establish a prima facie case of his claim at the pleading stage, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013). Distinguishing sufficient from insufficient pleadings is a "context-specific task." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## II. Doe's Section 1983 Substantive Due Process Claims (Count VI)

Federal law provides a cause of action against state officials who deprive, or cause another to deprive, an individual of rights protected by the United States Constitution or other federal laws. 42 U.S.C. § 1983. To prevail under § 1983, "a plaintiff must show that 'the challenged conduct is attributable to a person acting under color of state law' and that 'the conduct must have worked a denial of rights secured by the Constitution or by federal law.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 37 (1st Cir. 2013) (alternation omitted) *(quoting Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997)). There is no dispute that the Defendants acted under color of state law, and the Defendants concede that Doe had a constitutionally protected substantive due process right to bodily integrity, which covers freedom from sexual abuse by a public school teacher. Defs.' Mot. 10 n.5; *see also Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 65 (D. Me. 1999) ("It is well recognized that students have a fundamental right to bodily integrity that includes the right to be free from sexual abuse."). The question is whether Doe has alleged a "causal connection between the

defendant[s'] conduct and the alleged deprivation." *See García-González v. Puig-Morales*, 761 F.3d 81, 87 (1st Cir. 2014).

Doe advances two theories for how the Defendants are responsible for his injuries under § 1983: (1) a state-created danger theory and (2) a failure to train and supervise theory. Pl.'s Opp'n 5–6 (ECF No. 23). The Defendants contend that he cannot prevail under either theory.

### A. State-Created Danger Theory

"As a general matter, 'a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'" *Irish v. Maine*, 849 F.3d 521, 525 (1st Cir. 2017) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). There is an exception to this general rule, which the Courts of Appeals in at least eight circuits have recognized as the "state-created danger" theory. *Id.* at 525–26. The First Circuit has "discussed the possible existence of the state-created danger theory, [but has] never found it applicable to any specific set of facts." *Id.* at 526; *see also Raymond v. Me. Sch. Admin. Dist. 6*, No. 2:18-CV-00379-JAW, 2019 WL 2110498, at *7–9 (D. Me. May 14, 2019) (court denied a school district's motion to dismiss a § 1983 claim where the plaintiff proceeded under a state-created danger theory).

"Under a [state-created] danger theory, a plaintiff must show that a 'government employee, in the rare and exceptional case, affirmatively act[ed] to increase the threat of harm to the claimant or affirmatively prevent[ed] the individual from receiving assistance.'" *Id.* at *7 (quoting *Lockhart-Bembery v. Sauro*, 498 F.3d 69, 77 (1st Cir. 2007)). Additionally, "the state actions must shock the

conscience of the court." *Irish*, 849 F.3d at 526 (citing *Rivera v. Rhode Island*, 402 F.3d 27, 35 (1st Cir. 2005)). "In situations where actors have an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice to 'shock the conscience.'" *Rivera*, 402 F.3d at 36 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 851–52 (1998)).

In this case, Doe adequately pleaded the state-created danger theory by alleging that the Defendants "created an unreasonable risk of harm" that Doe would be deprived of his constitutional rights. Am. Compl. ¶ 69; *see also McCann on behalf of J.M. v. York Sch. Dep't*, 365 F. Supp. 3d 132, 146 (D. Me. 2019) (quoting *Morgan v. Town of Lexington*, 823 F.3d 737, 743 (1st Cir. 2016)) ("Under the state-created danger theory, the Due Process Clause may be implicated 'where a state official acts so as to create or even markedly increase a risk to an individual.'"). Specifically, Doe alleges that the Defendants were on notice of inappropriate conduct on the part of Lamontagne, and that despite this notice, the Defendants failed to reasonably investigate or initiate remedial action, and that the Defendants thereby increased the threat of harm to Doe. Am. Compl. ¶¶ 22, 69. Doe further claims that the Defendants failed to enforce policies designed to prevent sexual conduct and permitted Lamontagne to have unsupervised access to Doe after being put on notice of potential sexual misconduct. Am. Compl. ¶ 65. If the Defendants had intervened, Doe claims that they could have stopped his mistreatment. Am. Compl. ¶¶ 65, 69.

These allegations support a claim under a state-created danger theory, particularly where the Defendants' actions—permitting Lamontagne unsupervised

access to the Plaintiff after the March investigation—may have exposed Doe to additional abuse. More factual development is necessary to determine whether the actions of the Defendants increased the risk of harm to Doe and whether those actions constitute conscious-shocking behavior. *Irish*, 849 F.3d at 527–28 (court indicated that pre-discovery motions to dismiss may be inappropriate for some § 1983 claims under a state-created danger theory). But for the purposes of a motion to dismiss, the Plaintiff has stated a claim.

### B.   Claims against the District for Failure to Train and Supervise

In addition to showing that his harm was caused by a constitutional violation, to establish § 1983 liability against a municipality, a plaintiff must also show that the municipality is responsible for that violation. *Young v. City of Providence*, 404 F.3d 4, 25–26 (1st Cir. 2005). It is not enough that the municipality employed someone who violated the plaintiff's rights. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978) (plaintiff may not rely on respondeat superior to establish municipal liability for the actions of employees). Rather, a plaintiff must show that "[t]he alleged municipal action at issue . . . constitute[s] a 'policy or custom' attributable to the [School District]." *Young*, 404 F.3d at 26 (citations omitted).

A policy or custom, as required for municipal liability under § 1983, can be demonstrated by a formal policy statement, by persistent practices that give a custom the force of law, or by actions taken by officials who have final policymaking authority. *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989). Official policy or custom may in some cases be shown if a municipality has failed to train or supervise its employees. *Id.* at 1158–61 (widespread failure to train where

municipality knows of and does nothing to remedy a problem may constitute municipal custom and practice sufficient to establish section 1983 liability). Where the policy in question does not itself constitute the constitutional violation—but rather is alleged to have led to the violation—the plaintiff must additionally show that the defendant acted with deliberate indifference. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 406–07 (1997) (explaining that if the policy or custom does not facially violate federal law, causation can be established only by "demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences").

Doe alleges that the District's failure to train and supervise its "administrators, employees, staff, and agents" resulted in a deficient investigation and allowed Lamontagne to continue to have unsupervised access to Doe after the March 2017 investigation. Am. Compl. ¶¶ 64–67; Pl. Opp'n. 13. The Amended Complaint is not a model of clarity on the failure to train theory, and the Defendants interpreted it as a claim that the Defendants failed to train Lamontagne.[2] Defs.' Mot. at 7–8. But there is enough in the Amended Complaint to put the Defendants on notice that the Plaintiff's theory extends to a failure to train Sullivan and Lewia in how to investigate allegations that a teacher is engaging in sexual conduct with a student. *See* Am. Compl. ¶¶ 64–67, 73.

---

[2]   The Defendants argue that the District cannot be liable for failure to train Lamontagne, because Lamontagne "knew that what she was doing was prohibited and accordingly, it is likely that no amount of training would have produced a different result." Defs.' Mot. at 9.

More factual development is necessary to determine whether the District failed to implement policies or train and supervise its employees on policies related to investigations of sexual misconduct by a District employee and whether such failure caused the violation the Plaintiff's constitutional rights. But on the bare allegations of the Amended Complaint, Doe has sufficiently alleged a § 1983 claim against the District for failure to train and supervise its employees.

### C.  Claims Against Sullivan and Lewia for Failure to Train and Supervise

Although the First Circuit has not yet adopted a test for administrator liability for cases involving § 1983 claims based on sexual abuse in public schools, other courts have required plaintiffs to establish that

> (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and
>
> (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and
>
> (3) such failure caused a constitutional injury to the student.

*Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994); *see also Poe v. Leonard*, 282 F.3d 123, 142 (2d Cir. 2002); *Armstrong v. Lamy*, 938 F. Supp. 1018, 1033–34 (D. Mass. 1996) (discussing Third, Fifth, Eighth, and Tenth Circuit tests for liability).

The Defendants assert that the Amended Complaint fails to plead sufficient facts to support a claim that Sullivan and Lewia caused Doe's constitutional injury and acted with deliberate indifference toward his constitutional rights. Defs.' Mot.

9

11–12. The Amended Complaint alleges that Sullivan and Lewia were on notice of the alleged sexual relationship between Lamontagne and Doe when they launched the first investigation in March of 2017. *See* Am. Compl. ¶¶ 19, 66; s*ee also Taylor*, 15 F.3d at 454; *Doe v. Town of Wayland*, 179 F. Supp. 3d 155, 167 (D. Mass. 2016) (plaintiff stated a claim, in part, because school defendants had knowledge of risk of harm to student). The Amended Complaint further alleges that Sullivan and Lewia had supervisory responsibilities over Lamontagne, that they had reason to know of Lamontagne's abuse, that they declined to include Doe's parents in an interview of their minor son, that they took Doe's denials at face value, that they allowed Lamontagne to have continued unsupervised contact with Doe, and that the continued unsupervised conduct resulted in harm to Doe. Moreover, the Amended Complaint alleges that Lamontagne continued to sexually abuse Doe after the March investigation and that the abuse peaked around May or June of 2017. Am. Compl. ¶¶ 13–15, 22–26. These allegations state a sufficient causal connection between Sullivan and Lewia's conduct and Doe's harm.

Further, the Amended Complaint sufficiently alleges deliberately indifferent behavior. *Rivera*, 402 F.3d at 36 ("[D]eliberately indifferent behavior may suffice to 'shock the conscience.' "). Sullivan and Lewia had the opportunity to reflect and make a reasoned, rational decision during the March 2017 Investigation. Am. Compl. ¶ 66. This opportunity and their alleged failure to enact measures to protect Doe state a claim for deliberate indifference that is "sufficiently conscience-shocking to survive a motion to dismiss." *Doe 1 v. Bos. Pub. Sch.*, No. 17-CV-11653-ADB, 2019 WL 1005498,

at *5, *12 (D. Mass. Mar. 1, 2019) (same standard for deliberate indifference applies under § 1983 and Title IX); *see also Porto v. Town of Tewksbury*, 488 F.3d 67, 72–73 (1st Cir. 2007) (deliberate indifference under Title IX is response that is "clearly unreasonable in light of the known circumstances").

Once again, the Plaintiff has not had the benefit of discovery, and more factual development is necessary to determine whether the information known to Sullivan and Lewia pointed plainly toward the conclusion that Lamontagne was sexually abusing Doe, whether the investigation that was undertaken was inadequate, and whether Sullivan and Lewia consciously disregarded a substantial risk of serious harm. For purposes of a motion to dismiss, the Plaintiff has sufficiently asserted a § 1983 claim against Sullivan and Lewia.

### III.  Qualified Immunity

Sullivan and Lewia also contend that they are entitled to qualified immunity. Defs.' Mot. 10 & n.5. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). The Defendants acknowledge that the right to be free of sexual abuse by a teacher is clearly established.  In addition, I have found that the Amended Complaint adequately states a claim for violation of Doe's substantive due process rights. Thus, at this stage of the case, Sullivan and Lewia have not established that they are entitled to qualified immunity.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendants' motion to dismiss Count VI of the Amended Complaint (ECF No. 15) and **DENIES** Defendants' renewed motion to dismiss (ECF No. 28).


SO ORDERED.

                                                /s/ Nancy Torresen
                                                United States District Judge

Dated this 29th day of May, 2020.